IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
HELENA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　Plaintiff,<br><br>vs.<br><br>BRET RUSSELL HAMLIN,<br>　　　　　　Defendant. | CR-23-08-H-BMM<br><br>**ORDER** |

## INTRODUCTION

A federal grand jury indicted Bret Russell Hamlin ("Hamlin") on five counts: 1) conspiracy to possess with intent to distribute 50 or more grams of actual methamphetamine (21 U.S.C. §841(a)(1) and 21 U.S.C. § 846); 2) attempted distribution of methamphetamine, (21 U.S.C. § 846); 3) attempt to possess with the intent to distribute 50 grams or more of actual methamphetamine (21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2); 4) possess with intent to distribute 5 or more grams of actual methamphetamine (21 U.S.C. § 841(a)(1)); and 5) drug user in possession of a firearm (18 U.S.C. § 922(g)(3)). (Doc 1.) Hamlin has filed a motion to suppress evidence (Doc. 48) and a motion to dismiss Count 5 (Doc. 45). The Government opposes both motions. (Doc. 52); (Doc. 55.) The Court held a hearing on these

motions on September 14, 2023. (Doc. 59.) The Court will deny Hamlin's motion to suppress evidence and deny Hamlin's motion to dismiss Count 5.

## FACTUAL AND LEGAL BACKGROUND

This case concerns a United States Postal Service ("USPS") postal package bearing the tracking number of EJ542 446 265. (Doc. 48 at 2.) Hamlin's co-defendant, Mark A. Beachem ("Beachem"), intended Hamlin as the recipient of the package. (*Id.*) Beachem sent the package from Fresno, California, with the intended destination of Helena, Montana. The express mail package listed a guaranteed delivery date of August 23, 2021. (Doc. 55-2 at 2.)

United States Postal Inspector Walt Tubbs flagged the postal package at the Helena USPS office. (Doc. 48 at 3.) Inspector Tubbs first observed the package at approximately 9:00 AM on August 23, 2021. Inspector Tubbs flagged the package for possible inspection based on the following factors: 1) the package's seams had been taped shut; 2) the package had been dropped to USPS late on a Friday afternoon; 3) the package had been mailed with the highest and most expensive class of shipping, priority mail express; and 4) the postage had been paid in cash. (Doc. 55 at 4-6.) Inspector Tubbs additionally noted the weight of the package, approximately 5 lbs., was unusual for a package sent via priority mail express. (*Id.*)

Inspector Tubbs held the package for further investigation at the Helena USPS sorting facility. Inspector Tubbs's investigation revealed that a package originating

from the same sender from Fresno, California had been delivered to the same Helena, Montana address two weeks earlier. (*Id.*) Inspector Tubbs contacted the Montana Highway Patrol to conduct a canine sniff on the package. Patrol Trooper James Beck and his K9 partner, Apollo, conducted a sniff on the package at approximately 1:05 PM on August 23, 2021. Trooper Beck observed Apollo alert after sniffing the package during a blind sniff search. (*Id.* at 4-5.)

Inspector Tubbs, Missouri River Drug Task Force Detective Andrew Blythe, and Homeland Security Inspector Rod Noe applied for and obtained a search warrant on the package from U.S. Magistrate Judge John Johnston at approximately 4:00 PM on August 23, 2021. (*Id.* at 5.) The law enforcement officers searched the package.

The law enforcement officers found a waffle maker box wrapped in tin foil within the package. (*Id.*) Law enforcement officers found two vacuum packed bundles of clear plastic inside the waffle maker box. (*Id.*) Each plastic bundle contained two separate bundles wrapped in clear cellophane wrap, for a total of four bundles. (*Id.* at 5-6.) The law enforcement officers opened the bundles and found methamphetamine. (*Id.* at 5.) The total combined weight of the methamphetamine found in the bundles totaled approximately 1,616 grams. (*Id.*) Law enforcement officers removed the methamphetamine, placed magazines in the package to simulate the package's original weight, and repacked the package. (*Id*. at 7.) The package search took law enforcement officers between 15 and 30 minutes.

Inspector Tubbs conducted a controlled delivery of the package to Hamlin on August 23, 2021. Inspector Tubbs approached the delivery address listed on the package and rang the doorbell. A man opened the door, and Inspector Tubbs asked the man who opened the door if he was Bret Hamlin, to which the man responded in the affirmative. (Doc. 44 at 9.) Inspector Tubbs delivered the package, and Hamlin took possession. The controlled delivery occurred slightly after 5:00 PM on August 23, 2021.

Missouri River Drug Task Force agents applied for and received an anticipatory search warrant for Hamlin's residence at approximately 5:06 PM on August 23, 2021. Missouri River Drug Task Force agents executed the search warrant on Hamlin's residence following the controlled delivery. The search revealed a Ruger 9mm pistol, four Ruger magazines containing 39 9mm rounds, and a Remington 700 rifle, caliber 30-06. (Doc. 50 at 8-9.) Officers also found several digital scales, Ziploc baggies, glass pipes for smoking methamphetamine, and several thousand dollars in cash. (Doc. 55 at 7.) Hamlin admitted during a *Mirandi*zed interview to using methamphetamine (*Id.*)

Hamlin challenges Inspector Tubbs's reasonable suspicion for detaining the package. (Doc. 49 at 3-4.) Hamlin argues that Inspector Tubbs lacked reasonable suspicion, and thus the seizure of the package violated the Fourth Amendment's prohibition on unreasonable searches and seizures. (*Id.*) Hamlin seeks to suppress

4

the contents of the package and the subsequent search of Hamlin's residence (*Id.*) Hamlin also challenges 18 U.S.C. §922(g)(3) as being a facially unconstitutional restriction on a person's Second Amendment right to bear arms. (Doc. 46 at 2-3.)

## LEGAL STANDARD

The recipient of a mailed item possesses a reasonable expectation that the mail will not be detained by postal employees beyond the normal delivery date and time. *United States v. Hernandez*, 313 F.3d 1206, 1210 (9th Cir. 2002). Any retention or diversion that does not affect the timeliness of the delivery, however, does not implicate the Fourth Amendment. *See United States v. Vasquez*, 213 F.3d 425, 426 (8th Cir. 2000). The Fourth Amendment is not implicated when only the external features of a package, like the address label, are examined. *See, e.g., United States v. Choate,* 576 F.2d 165, 174 (9th Cir. 1978). No reasonable expectation exists that the outside of a package given to a mail-carrier will be kept private. *Id.* Fourth Amendment possessory interest may be created by a carrier agreeing to a guaranteed delivery time. *United States v. Jefferson*, 566 F.3d 928, 934 (9th Cir. 2009). If a guaranteed delivery time has been provided, and the guaranteed delivery time passes, law enforcement must have a "reasonable and articulable suspicion" that the package contains contraband or evidence of illegal activity for further detention of the package. *Id.* at 935.

Postal inspectors may detain a package to investigate "if they have a reasonable and articulable suspicion" that it contains contraband or evidence of illegal activity. *Hernandez*, 313 F.3d at 1210. Courts gauge whether such reasonable, articulable suspicion exists through a totality of the circumstances analysis. *United States v. Arvizu*, 534 U.S. 266, 273 (2002). Courts assess whether the postal inspector had a "particularized, and objective basis for suspecting legal wrongdoing." *Id.*

The recent U.S. Supreme Court decision in *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, instructs the Court on how to assess whether firearms regulations comport with the Second Amendment's text and historical understanding. 142 S. Ct. 2111 (2022). Courts first must consider whether the plain text of the Second Amendment covers the individual's conduct. *Id.* at 2126. The government bears the burden of demonstrating that the regulation proves consistent with "this Nation's historical tradition." *Id.* The government need not point to an identical historical statute to effectuate this comparison. *Id.* at 2133. The government instead must compare only to a "representative historical analogue." *Id.* Justice Kavanaugh agreed with the Court's opinion, but further noted in a concurring opinion that "the Second Amendment allows a 'variety' of gun regulations." *Id.* at 2162. Justice Kavanaugh further stated that nothing in the Court's opinion in *Bruen* "should be taken to cast doubt on longstanding prohibitions on the possession of

firearms by felons and the mentally ill." *Id.* (quoting *District of Columbia v. Heller*, 554 U.S. 570, 626 (2008)).

## DISCUSSION

### I. Motion to Suppress Evidence

Hamlin's argument for suppressing evidence fails because Inspector Tubbs's flagging of the package for inspection in the Helena USPS office did not implicate the Fourth Amendment. The recipient of a package has a protected interest in the timely delivery of that package. *Hernandez*, 313 F.3d at 1210. The package in *Hernandez* was expected to be delivered at some time on March 30, 2000. *Id.* at 1208. A postal inspector captured the package on March 30, 2000, however, and the application for and execution of a search warrant caused the package to be delivered two days later, on April 1, 2000. *Id.* The Ninth Circuit determined that a seizure had occurred because the government had interfered with *Hernandez*'s interest in the timely delivery of the package. *Id.* at 1210. The Ninth Circuit further determined, however, that reasonable suspicion supported the government's interference with *Hernandez*'s interest in a timely delivery. *Id.* at 1212.

Hamlin argues that Inspector Tubbs detained the package past the normal delivery time, and that such detention amounted to a seizure that implicates the Fourth Amendment. (Doc. 49 at 3-4.) Hamlin cites to *Hernandez* for the proposition that a Fourth Amendment seizure has occurred if the government action delays the

mail beyond the normal delivery date and time. (*Id.* at 10.) Hamlin claims that no reasonable suspicion supported Inspector Tubbs's seizure, and, therefore, all findings from the search should be suppressed. (*Id.* at 12.) The Government counters that Inspector Tubbs's inspection of the package did not rise to the level of a seizure that would implicate the Fourth Amendment. (Doc. 55 at 2.) The Government additionally argues that specific and articulable facts that the package contained contraband supported the investigation if Officer Tubbs's investigation amounted to a seizure. (*Id.*) The Government also asserts that Inspector Tubbs obtained a federal search warrant for the package and relied on good faith on the validity of the warrant. (*Id.*)

Hamlin's argument fails because the facts of *Hernandez* prove distinguishable. The package in *Hernandez* was delayed for approximately two days. 313 F.3d at 1208. The package intended for Hamlin was not even delayed by one day. (Doc. 55 at 13-14.) The package listed a guaranteed delivery date of August 23, 2021. (Doc. 55-2 at 1.) Inspector Tubbs's controlled delivery took place at or slightly after 5:00 PM on the guaranteed delivery date of August 23, 2021. (Doc. 55 at 13-14.) The Government claims that the package's delay was, at most, four-and-one-half hours. (Doc. 55 at 13.) The facts here prove more akin to *United States v. Quoc Viet Hoang*, 486 F.3d 1156, 1162 (9th Cir. 2007). The Ninth Circuit in *Hoang* rejected the claim that a ten-minute delay in a FedEx hold room implicated the

Fourth Amendment. *Id.* Admittedly, a ten-minute delay differs from a four-and-one-half hour delay. This difference proves shorter than the difference between a four-and-one-half hour delay, with Hamlin's delivery, and a two-day delay in *Hernandez*.

Hamlin further argues that the several hour delay in the delivery of the package on the guaranteed delivery date constituted a seizure under the Fourth Amendment. Hamlin testified that mail routinely arrived at his address between 10:30 and 11:00 AM each day. Hamlin's argument proves unavailing, however, because *Hernandez* directs only that the recipient of a package has an interest in a "timely delivery" of the package, not in the exact time of delivery of the package. 313 F.3d at 1208. Inspector Tubbs delivered the package on the guaranteed delivery date of August 23, 2021. (Doc. 55-2 at 2.) The facts do not implicate *Jefferson* because, as stated by Inspector Tubbs, the USPS provides no guaranteed delivery times for residential addresses. Hamlin can assert no Fourth Amendment possessory interest in a guaranteed delivery time of the package.

## II.   Motion to Dismiss Count 5

Hamlin falls short in establishing that § 922(g)(3) is facially unconstitutional. Hamlin's argument also fails because the facts presented here prove distinguishable from *United States v. Daniels*. 2023 U.S. App. LEXIS 20870 (5th Cir. Aug. 9, 2023).

Courts in the District of Montana in reviewing similar challenges have concluded that *Bruen* did not overrule prior precedent regarding gun-ownership

prohibition when the basis for the prohibition arose from the application of *Heller*, 554 U.S. 570. *See United States v. Boyd*, 1:20-CR-121-DLC-1, at *6 (D. Mont. Jan. 25, 2023) (quoting *United States v. Butts*, F. Supp. 3d, 2022 U.S. Dist. LEXIS 197925, at *3 (D. Mont. Oct. 31, 2022)) (citing *Miller v. Gammie*, 335 F.3d 889, 893 (9th Cir. 2003)); *see also United States v. Stennerson*, 2023 U.S. Dist. LEXIS 31244 (D. Mont., February 24, 2023) The District of Montana also has recognized that *Heller* is not, ""clearly irreconcilable with the reasoning or theory of intervening higher authority." *Id.* For example, the Ninth Circuit, in applying *Heller*, concluded that habitual drug users in possession of firearms pose the same danger as felons and the mentally ill. *See Stennerson*, 2023 U.S. Dist. LEXIS 31244 at *4 (citing *United States v. Dugan*, 657 F.3d 998, 999-1000 (9th Cir. 2011)).

Hamlin cites to *Daniels*, 2023 U.S. App. LEXIS 20870 at *3, to argue that this nation's history and tradition does not justify disarming a sober citizen based exclusively on past drug use. (Doc. 46 at 4-5.) The Government responds that the plain text of the Second Amendment fails to protect possession of firearms by unlawful users of controlled substances. (Doc. 52 at 5.) The Government contends that the term "the people" found in the Second Amendment applies to only "law abiding, responsible" citizens keeping or bearing arms for "lawful purposes." (*Id.* at 6.) The Government further argues that § 922(g)(3) is "consistent with this Nation's

historical tradition of firearm regulation," even if the plain text of the Second Amendment covers Hamlin's conduct. (*Id.* at 10.)

Courts in the District of Montana have determined that *Bruen* did not overrule prior precedent regarding gun ownership, such as *United States v. Vongxay*, 594 F.3d 1111, 1118 (9th Cir. 2011), because those cases applying *Heller* were not clearly irreconcilable with *Bruen. See Stennerson*, 2023 U.S. Dist. LEXIS 31244 at *4. In *Vongxay*, the Ninth Circuit, applying *Heller*, concluded that prohibiting felons from possessing firearms comports with historical limitations on gun possession because "the right to bear arms does not preclude laws disarming unvirtuous citizens . . .." 594 F.3d at 1118. The Ninth Circuit applied *Heller* in *Dugan* and concluded that habitual drug users in possession of firearms pose the same danger as felons and the mentally ill, which are two groups that were historically barred from possessing firearms. 657 F.3d at 999-1000. The Court follows Ninth Circuit precedent, and upon determining that *Vonxgay* and *Dugan* are good law, determines that § 922(g)(3) is constitutional.

Hamlin asks that the Court reconsider the constitutionality of § 922(g)(3) in light of *Daniels*. (Doc. 46 at 6.) The Court notes the substantial differences between *Daniels* and the facts here. Hamlin admitted to using approximately 3.5 grams of methamphetamine every two weeks. (Doc. 52 at 9-10.) The defendant in *Daniels,* in contrast, admitted to having used marijuana approximately 14 days per month. 2023

11

U.S. App. LEXIS 20870 at *3. Officers discovered Hamlin's firearms during a search conducted pursuant to a warrant granted upon probable cause that Hamlin was the intended recipient of a large quantity of methamphetamine in a package. (*See* Doc. 55 at 7.) In fact, Hamlin was the intended recipient of approximately 1,616 grams, or approximately 3 pounds and 9 ounces, of methamphetamine. (*See* Doc. 49 at 8.) The discovery of Hamlin's firearms related to Hamlin's receipt and possession of a large quantity of methamphetamine from the package.

The defendant in *Daniels*, in contrast, was pulled over for driving without a license plate. 2023 U.S. App. LEXIS 20870 at *3. It was only after having smelled marijuana and having observed several marijuana cigarette butts in the ashtray did law enforcement officers search the cabin of Daniels's vehicle to reveal two loaded firearms. *Id.* The discovery of Daniels's firearms was not related to Daniels's alleged use of marijuana, but rather stemmed from a traffic stop that evolved into a drug investigation. *Id.* These factual distinctions lead the Court to decline to follow the Fifth Circuit's conclusion in *Daniels* and instead follow the District of Montana in applying the controlling Ninth Circuit precedent in *Dugan*. 657 F.3d 998. The Court will deny Hamlin's motion to dismiss Count 5.

Accordingly, **IT IS ORDERED:**

1. Hamlin's Motion to Suppress Evidence (Doc. 48) is **DENIED.**

2. Hamlin's Motion to Dismiss Count 5 (Doc. 45) is **DENIED.**

DATED this 5th day of October 2023.

_____
Brian Morris, Chief District Judge
United States District Court